GOFFINET ET AL., DEMANDANTES Y APELANTES, *v.* SÁNCHEZ ET AL., DEMANDADOS Y APELADOS.

APELACIÓN procedente de la Corte de Distrito de Humacao en recurso sobre *injunction.*

No. 1512.—Resuelto en enero 30, 1917.

INJUNCTION—REFACCIÓN AGRÍCOLA—MOLIENDA DE CAÑAS—INTENCIÓN DEL LEGISLADOR—ACREEDORES POSTERIORES.—Del texto de los artículos 10 y 19 de la ley sobre contratos de refacción agrícola y molienda de cañas, de 10 de marzo de 1910, según fué enmendada en 1911, no parece que haya sido la intención de la Legislatura que el remedio del *injunction* para obligar al cumplimiento específico de un *contrato de molienda de cañas,* deba tener el efecto de beneficiar a un acreedor posterior que hubiera celebrado otro *contrato* para fines de *refacción agrícola* enteramente independiente con el mismo deudor, garantizado con la cosecha, en una acción establecida por dicho acreedor posterior y en la cual no fué parte el otro acreedor en el contrato de molienda.

ID.—ID.—FALTA DE CAUSA DE ACCIÓN.—En el presente caso resolvióse que la petición de *injunction* es excepcionable por falta de causa de acción y que la excepción debía sostenerse por cuanto el *contrato sobre refacción agrícola* no está contenido en un *contrato de molienda de cañas,* ni ninguno de los contratos que se mencionan en la demanda es *parte del otro,* es decir entre sí, ni eran los demandantes partes en el contrato de molienda, ni tampoco parte en el pleito de la Central Santa Juana.

Los hechos están expresados en la opinión.

Abogado de los apelantes: *Sr. Herminio Díaz Navarro.*

Abogados de los apelados: *Sres. Arturo Aponte, Jr., y Carlos Travecier.*

EL JUEZ ASOCIADO SR. HUTCHISON, emitió la opinión del tribunal.

Los peticionarios y apelantes radicaron en la Corte de Distrito de Humacao la siguiente demanda:

"Los Barones Augusto y Constantino Goffinet que son los demandantes en el caso que arriba se expresa, comparecen por conducto de su abogado Herminio Díaz y demandando a Don Francisco Sánchez Rodríguez y a su esposa Doña Mercedes Pagán, alegan y exponen:

"*Primero.*—Que en un documento privado que se otorgó en la ciudad de San Juan el 9 de noviembre de 1912 por los demandantes y los demandados, suscribiéndolo ante el notario Don Herminio Díaz Navarro, cuyo documento acompañamos haciéndolo parte de esta demanda como si estuviese en ella inserto, hicieron constar dichas partes lo siguiente:

"1. Que Don Francisco Sánchez Rodríguez y su referida esposa poseían y usufructuaban las ocho fincas que en dicho contrato se describen.

"2. Que el referido Sr. Sánchez al disolverse la sociedad Aponte, Sánchez y Compañía, se hizo cargo de un contrato que la S. A. des Sucreries de Saint Jean tenía celebrado con la indicada sociedad sobre siembra y molienda de ciento cincuenta cuerdas de plantaciones de cañas dulces para las zafras de mil novecientos doce, mil novecientos trece y mil novecientos catorce en terrenos arrendados por aquella mercantil a Doña Carolina Cajas viuda de Valdés, compuesto de trescientas diez y siete cuerdas, radicadas en el barrio de Quebradas del término de San Lorenzo, habiéndose también comprometido en otro contrato el referido Sánchez y su esposa, a preparar, sembrar y cultivar de cañas dulces para la zafra de mil novecientos doce cincuenta cuerdas y para las de mil novecientos trece y mil novecientos catorce, cien cuerdas, cuyos dos contratos los habían declarado nulos de común acuerdo el nueve de noviembre de mil novecientos doce la S. A. des Sucreries de Saint Jean y el señor Sánchez y su esposa.

"3. Que para poder dar cumplimiento al dicho contrato, los demandantes convinieron con los demandados en que aquéllos abrirían a éstos un crédito, como así lo hicieron, declarando los demandados estar adeudando a los demandantes hasta el diez y ocho de octubre de mil novecientos doce DIEZ MIL dollars más los intereses al tipo del diez por ciento anual, y ambas partes que el contrato por el cual tal crédito les fué abierto quedaba anulado desde el nueve de noviembre

de mil novecientos doce, debiendo cargarse los predichos diez mil dollars al nuevo crédito refaccionario que según este nuevo contrato, como más adelante se provee, se abrirá.

"4. Que en las fincas que en este nuevo contrato se describen estaba comprometido el Sr. Sánchez y su esposa por otro contrato firmado en la misma fecha que el presente, a lo que sigue: (*a*) a entregar a la S. A. des Sucreries de Saint Jean para ser molidas en la zafra de 1913 y en su Central Santa Juana, establecida en la ciudad de Caguas, todas las cañas de azúcar que en 9 de noviembre de 1912 tenían sembradas el Sr. Sánchez y su esposa como sucesores de Aponte, Sánchez y Compañía y por sí mismos; (*b*) a preparar, sembrar y cultivar de cañas de azúcar, por su cuenta, de seiscientas a ochocientas cuerdas para la zafra de 1914 y de ochocientas a mil cuerdas para cada una de las zafras de 1915 a 1918 inclusives pudiendo indistintamente plantar el número de cuerdas antes dicho en las fincas que estime oportuno de las que se relacionan en el contrato adjunto; (*c*) a entregar a la S. A. des Sucreries de Saint Jean, para ser molidas en su predicha Central Santa Juana, en cada una de las referidas zafras, de mil novecientos catorce a mil novecientos diez y ocho inclusives, todas las cañas de azúcar que obtuviese dicho señor Sánchez y su esposa por virtud de la obligación contraída en el párrafo letra B anterior.

"5. Que para atender a la administración, sostenimiento, cultivo y mejoramiento de las cañas que debían el Sr. Sánchez y su esposa sembrar en las mencionadas fincas rústicas, los demandantes se comprometían con los demandados a abrirle y declaraban haberle abierto un crédito refaccionario con cargo al que los demandados recibirían en el acto de la firma de este contrato de los Señores Barones de Goffinet la suma de cinco mil dollars, por los que otorgaban en aquel acto los demandados el más eficaz recibo, y recibirían además con cargo a dicho crédito y de los demandantes hasta setenta dollars por cuerda de caña de gran cultura o plantilla y cuarenta dollars por cuerda de tocón, mediante la entrega de los recibos correspondientes, y entendiéndose que dichas cantidades serán entregadas a los demandados cuando a juicio del representante de los Señores Barones de Goffinet tuviesen el señor Sánchez y su esposa bien trabajados los referidos terrenos y en proporción siempre con los trabajos que se hubiesen en ellos realizado.

"6. El Señor Sánchez y su esposa se comprometieron a devolver a los demandantes Señores de Goffinet, o a quien los representase, al terminar cada cosecho, lo que resultaran adeudarles por prin-

cipal e intereses al diez por ciento anual, por virtud de las cantidades que hubiesen recibido con cargo al predicho crédito refaccionario.

"7. En garantía del abono en la fecha indicada a los Señores de Goffinet o a quien los representase, de la cantidad que en esa fecha resultase adeudando por principal e intereses el Señor Sánchez y su esposa, afectaban y gravaban en la forma y con las preferencias estatuídas en la Ley sobre Contratos Agrícolas de diez de marzo de mil novecientos diez y enmendada en nueve de marzo de mil novecientos once, las cañas de azúcar que se produjesen y el azúcar que de éstas se obtuviera en las predichas fincas, según lo estatuído en el antes referido contrato de siembra y molienda de cañas últimamente hecho por el Señor Sánchez y su esposa con la S. A. des Sucreries de Saint Jean.

"8. Quedó entendido y convenido que siendo el representante legítimo y apoderado en esta isla de la Sucreries de Saint Jean el que en nombre de los demandantes llevó a cabo este contrato de refacción agrícola, quedaba notificada dicha corporación del mismo, a los efectos de lo que prescribe la sección once de la referida ley de contratos de refacción agrícola y molienda de cañas.

"*Segundo.*—El precedente contrato se presentó en el Registro de Contratos Agrícolas el quince de enero de mil novecientos catorce, inscribiéndose el cinco de febrero de mil novecientos catorce en cuanto a las ocho fincas que comprende a los folios 29, 33, 36, 39, 42, 45, 48 y 51 del tomo primero de San Lorenzo, fincas números 7, 8, 9, 10, 11, 12, 13 y 14, anotaciones primeras, respectivamente.

"*Tercero.*—De conformidad con dicho contrato, los demandantes hicieron a los demandados, para la zafra de 1914, los anticipos de cultivo comprometidos. En 1º. de septiembre de 1914, y en escritura otorgada en Caguas, ante el notario Don Lorenzo Jiménez, los demandados, confesando que adeudaban a los demandantes, según liquidación, la suma de DIEZ MIL dollars y que no pudiendo solventarla se comprometían a pagarlos en cantidades parciales en 30 de junio de 1915, 1916 y 1917 en las zafras correspondientes a tales años, de acuerdo con el antedicho contrato de refacción, es decir, que después de reembolsar con los azúcares el montante de los anticipos recibidos para cada zafra, el restante de la cantidad producida por dichos azúcares se aplicaría al reembolso de los predichos diez mil dollars. Los demandados dieron en prenda a los demandantes, en garantía del cumplimiento de ese convenio, los ciento sesenta bueyes, cuatro caballos, veinte carros y dos grúas que en la referida escritura se deter-

minan y que eran y son de dichos demandados, quedando, según la escritura, en posesión de esos bienes los demandantes.

"*Cuarto.*—Aplazado así el pago por los demandados a los demandantes de los diez mil dollars que aquéllos quedaron a deber a éstos por anticipos después de la zafra de 1914, los demandantes, para la zafra de 1915, continuaron siempre en cumplimiento estricto de su predicho contrato de refacción agrícola, haciéndole al Sr. Sánchez lo que éste pedía para el cultivo de sus cañas plantadas para el cosecho de 1915 dicho, y habiendo terminado esta zafra de 1915, liquidada la cuenta de los demandados, no sólo no satisficieron la totalidad de los anticipos que para esa cosecha se les hizo por los demandantes, sino que quedaron a deber a ellos cuatro mil ciento sesenta y seis dollars, treinta y cuatro centavos, y además la tercera parte de los diez mil dollars a que se refiere el párrafo anterior.

"*Quinto.*—Hallábanse adeudando, pues, el 30 de junio último, de plazo vencido los demandados a los demandantes la suma de ($7,499.67¼) siete mil cuatrocientos noventa y nueve dollars, sesenta y siete centavos y un cuarto, con sus intereses liquidados, tal como se ha expresado, permaneciendo esa deuda insoluta en su totalidad.

"*Sexto.*—A pesar de haber los demandantes cumplido religiosamente dicho contrato entregando a Sánchez anticipos para 1916, a pesar de que el Sr. Sánchez hizo constar en su dicho contrato de refacción (párrafo 3) que su arrendamiento del terreno de las Señoras Soto Hernández y Tous Soto que por su título vencía el 17 de julio de 1915, por todo el término del predicho contrato de refacción, es lo cierto, que habiendo en realidad terminado dicho arriendo el 17 de julio de 1915, el Sr. Sánchez abandonó los trabajos de cultivo y de sostenimiento de las cañas por él plantadas, hasta tal punto y manera, que no las atiende en absoluto y si las cosas continuasen en el actual estado, esas cañas se perderían por completo como están ya casi perdidas, debiendo advertirse que según manifestaciones del propio demandado Señor Sánchez, tiene sembradas en las referidas fincas de los Señores Valdés cincuenta cuerdas de gran cultura, ciento cincuenta cuerdas de cañas de primavera y sesenta cuerdas de retoño, o sea por todo, más o menos, doscientas ochenta cuerdas.

*Séptimo.*—Que dada la exposición de hechos preinserta, no es preciso más para demostrar: (*a*) que es absolutamente necesario y preciso que el Sr. Sánchez no continúe en la actitud mencionada con respecto al contrato de que se trata, porque ello causaría a esta parte daños y perjuicios incalculables e irreparables de jure tratándose de un contrato de refacción agrícola; (*b*) que el demandante, para

evitar esos perjuicios irreparables y una multiplicidad de pleitos, no tiene otro remedio más pronto y expedito, que el *injunction,* que es el determinado por la Ley de Contratos agrícolas.

"POR TANTO, a V. H. respetuosamente

"SUPLICO se sirva decretar que los demandados estaban y están en la obligación por virtud de los predichos contratos y de acuerdo con los mismos, a cultivar en debida forma y no abandonar las cañas en ellos comprometidas hasta su cosecho y molienda y no habiéndolo hecho así, debe sustituírsele la S. A. des Sucreries de Saint Jean para ello, con la inspección de los demandados y que previa la prestación de la oportuna fianza, librar sin demora alguna un mandamiento de *injunction* provisional contra dichos demandados, ordenándoles, así como a todos los que de ellos dependan, que se abstengan de realizar acto alguno que impida que los dueños de la Sentral Santa Juana, o sea la S. A. des Sucreries de Saint Jean, en que han de ser molidas las cañas litigiosas, den a éstas el debido cultivo y las cosechen y muelan con la inspección de los demandados, poniendo entre tanto a dichos demandados en entredicho y al dictar el fallo decretar que quede en definitiva en vigor con carácter de permanente dicho *injunction,* con las costas."

La corte de distrito declaró con lugar la excepción previa formulada a la petición de *injunction,* por el fundamento de que los hechos elegados en ella no constituyen una causa de acción y desestimó la petición.

Los artículos 1 y 5 de una ley titulada Ley sobre Contratos de Refacción Agrícola y Molienda de Cañas y para otros fines, aprobada en 10 de marzo de 1910, en tanto son pertinentes, disponen lo siguiente:

"Sección 1.—Entiéndese por contrato de refacción agrícola aquél mediante el cual una de las partes entrega y la otra recibe, con carácter devolutivo, determinadas cantidades en dinero efectivo o en especies, bien de una sola vez o en sucesivas ocasiones, para atender a la administración, sostenimiento, cultivo o mejoramiento de fincas rústicas, quedando afectos y gravados los frutos de las mismas fincas al pago de las cantidades recibidas, con los intereses acordados.

&ast;      &ast;      &ast;      &ast;      &ast;      &ast;      &ast;

"Sección 5.—Se conocerá por contrato de molienda de cañas, a los efectos de esta ley, los verificados entre las factorías e ingenios

de azúcar y los llamados 'colonos,' propietarios, poseedores, arrendatarios o sub-arrendatarios de fincas destinadas en todo o en parte al cultivo de cañas, para la venta o molienda de cañas y elaboración o venta de azúcar.

*     *     *     *     *     *     *

''Si el contrato de molienda fuere comprensivo de crédito refaccionario, éste se regirá por lo preceptuado en esta ley para el crédito de refacción agrícola, pudiendo la factoría descontar al colono, del precio o liquidación de las cañas entregadas y molidas, en la forma que estipule el contrato, las cantidades suministradas al colono en concepto de refacción.''

Los artículos 10 y 19 de dicha ley, como fué enmendada en el año 1911, prescriben lo siguiente (bastardilla nuestra):

''Sección 10.—*En los contratos de molienda de caña,* si la factoría fuese enajenada, *el contrato de molienda* deberá ser respetado y cumplido por el nuevo adquirente, y cualquier *contrato de molienda de caña* registrado de acuerdo con esta ley puede ser obligado a cumplir específicamente por orden o sentencia de una corte de distrito de Puerto Rico, o de alguna otra corte de jurisdicción competente, contra cualquiera *de las partes,* y *contra cualquier persona,* firma o corporación, *a la cual fuere traspasado el dominio, posesión o administración de la central* o factoría en que dichas cañas hán de molerse, *o de las cañas* que así han de molerse, *o de los terrenos* en que tales cañas están sembradas o han de sembrarse, *o de cualquier interés en ellos,* cuando no pueda obligarse a otra persona al cumplimiento de tales contratos. Tal orden o sentencia puede prohibir el uso de dicha factoría, o la venta o disposición de tales cañas de un modo incompatible con dicho contrato, y puede obligar a cualquiera de las partes o cesionarios a cumplir las obligaciones del contrato entera y completamente, o en tal grado como la corte estimare conveniente, cuando no fuere practicable obligar al completo cumplimiento o dar amplio remedio; y con el fin de conceder el remédio de cumplimiento específico, el incumplimiento de tal contrato por cualquiera de las partes o cesionarios, se considerará como causa de perjuicio irreparable para la otra parte. La desobediencia de dicha orden o sentencia será considerada como desacato a la corte y será castigable como tal.

''Sección 19.—En caso de incumplimiento de *un contrato para la molienda de cañas* o para la entrega de la misma, la *parte* per-

judicada por dicho incumplimiento podrá obligar al cumplimiento específico del contrato, por medio de un *injunction,* por lo que hace a la cosecha en pie y al cultivo en desarrollo al tiempo de la violación del contrato; *Entendiéndose,* que el remedio de cumplimiento específico o de *injunction* no será concedido en relación con los cultivos que no estén entonces en desarrollo, respecto a lo cual se deja a la *parte* perjudicada por el incumplimiento su acción legal por daños.''

Toda la argumentación de los apelantes está contenida en tres cortos párrafos que copiamos literalmente del alegato, a saber:

''Es indudable que de conformidad con esos preceptos legales, cuando un contrato de refacción agrícola está contenido en un contrato de molienda de cañas, o cuando el uno es parte del otro, la parte perjudicada en cualquiera de ellos por su incumplimiento, puede obligar al cumplimiento del contrato de molienda de cañas, por medio del *injunction.* Y en tales condiciones no son ya aplicables las reglas generales de nuestra Ley de *Injunction,* sino las reglas especiales de la Ley de Préstamos Agrícolas que, según la citada sección 10, en sus líneas finales, prescribe que el incumplimiento de tal contrato por cualquiera de las partes o cesionarios se considerará como causa de perjuicio irreparable a los efectos del *injunction.*

''Además, aun tratándose de la Ley general de *Injunction,* dice High en su obra sobre ese remedio, página 14, que aunque sea necesario que se demuestre la existencia de perjuicios esenciales y positivos a satisfacción de la corte de equidad antes de que sea concedido un *injunction,* en aquellos actos que, aunque irregulares y no autorizados puedan no tener un resultado dañino, no constituyen fundamento para el remedio.

''Pero cuando la repetición o continuación del acto de que se trate puede llegar a ser el fundamento de derechos adversos, la equidad puede intervenir por virtud del *injunction,* aun cuando no se demuestren derechos ni daños actuales o sustanciales.''

Pero en el presente caso el contrato sobre refacción agrícola no está *''contenido en un contrato de molienda de cañas,''* ni ninguno de los contratos que se mencionan en la demanda es *''parte del otro,''* ni son los demandantes en este caso

partes en el contrato de molienda, ni es parte en este pleito la Central Saint Jean. Aun cuando convenimos con los peticionarios y apelantes "que aunque sea necesario que se demuestre la existencia de perjuicios esenciales y positivos a satisfacción de la corte de equidad antes de que sea concedido un *injunction,* y que los actos que, aunque irregulares y no autorizados puedan no tener resultado dañino, no constituyen fundamento para el remedio" (High sobre *Injunctions,* edición 3ª., pág. 9, sec. 9), en el presente caso en manera alguna podemos comprender, y los apelantes no tratan de indicar, como es que "la repetición o continuación del acto en cuestión pueda llegar a ser el fundamento de derechos adversos."

Creemos que es demasiado claro para ser discutido el hecho de que la demanda no demuestra un caso en que deba concederse un *injunction* de acuerdo con las reglas comunes que regulan tales cuestiones; y se hace difícil a la verdad descubrir en el texto de los artículos 10 y 19, *supra,* alguna intención por parte de la legislatura de que el remedio más bien riguroso prescrito para el cumplimiento específico de "contratos de molienda de cañas," deba tener el efecto de beneficiar a los acreedores posteriores que crean conveniente celebrar "contratos para fines de refacción agrícola" enteramente independientes con el deudor, contando con la misma cosecha como garantía del dinero adelantado, en una acción establecida por dichos acreedores subsiguientes y en la cual el acreedor por virtud del contrato de molienda no es parte.

La sentencia apelada debe ser confirmada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, del Toro y Aldrey.